SO ORDERED.

SIGNED this 4 day of June, 2014.

_____
**Randy D. Doub
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
GREENVILLE DIVISION

IN RE:

| | |
|---|---|
| JASON BROOKS BRADSHAW, | CHAPTER 13 |
| TRACY STROUD BRADSHAW, | CASE NUMBER: 13-06176-8-RDD |
| DEBTORS | |

| | |
|---|---|
| JASON BROOKS BRADSHAW, | ADVERSARY PROCEEDING |
| TRACY STROUD BRADSHAW, | NUMBER: 14-00023-8-RDD |
| PLAINTIFFS, | |
| v. | |
| ASSET VENTURES, LLC, | |
| DEFENDANT. | |

### ORDER ON MOTION FOR DEFAULT JUDGMENT

Pending before the Court is the Motion for Default Judgment filed by Asset Ventures, LLC (the "Defendant") on March 17, 2014.

On February 7, 2014, Jason Brooks Bradshaw and Tracy Stroud Bradshaw (the "Plaintiffs") filed a complaint pursuant to 11 U.S.C. §§ 506, 1322(b)(2), 1325(a)(5) and 1327(c) seeking to value the collateral securing the mortgage lien held by the Defendant and to determine the secured status

of the Defendant's claim in the bankruptcy case. The Summons and Complaint were served upon the Defendant on February 12, 2014. The Defendant failed to file any responsive pleading. On March 17, 2014, the Court entered default against the Defendant.

At the hearing, the female debtor testified that the Plaintiffs reside at 4516 Harvest Lane, Wilson, North Carolina (the "Property") and that they have a first and second deed of trust on the real property. The female debtor testified that she did not believe the fair market value of the Property would be greater than $136,000.00. The female debtor testified that there are many repairs that need to be made to the Property including repairs to the roof, air conditioning unit, and floors. The tax value of the Property is $147,894.00. The Court finds that the fair market value of the Property is $136,000.00.

PNC Bank, N.A. as successor to First Franklin, A Division of National City Bank of Indiana, N.A. holds the first deed of trust on the Property. The Defendant holds the second deed of trust on the Property. The payoff of the first deed of trust is approximately $116,254.11. The payoff of the second deed of trust is approximately $27,000.00. The Defendant's deed of trust asserts a security interest in any escrow account, an item of personal property. The deed of trust provides that the Plaintiffs shall pay to the lender monthly payments which shall include a sum for taxes and any assessments, any grounds rents from the property, the hazard insurance on the property, and mortgage insurance. The deed of trust defines the monthly payments as "Funds". Pursuant to the deed of trust, the Funds are to be held in an institution the deposits or accounts of which are insured or guaranteed by a Federal or state agency. The Defendant shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. The deed of trust provides that the funds paid by the Plaintiffs to the Defendant for taxes and insurance are pledged as additional security for the sums secured by the deed of trust. The deed of trust provides that if the amount of the Funds held by the lender shall

2

exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at the Plaintiffs' option, either promptly repaid to the Plaintiff or credited to the Plaintiff on monthly installments of Funds. Upon payment in full of all sums secured by the deed of trust, the lender shall promptly refund to the Plaintiff any funds held by the lender. If the Property is sold or otherwise acquired by the lender, the lender shall apply prior to the sale of the Property any Funds held by the lender as a credit against the sums secured by the deed of trust.

Read together, Sections 506(a) and 1322(b)(2) allow for "bifurcation of a secured creditor's claim into secured and unsecured portions if the amount of the claim exceeds the value of the securing collateral." *In re Murray*, No. 10-10125-8-JRL, 2011 WL 5909638 at * 1 (Bankr. E.D.N.C. May 31, 2011) (citing *In re Bradsher*, 427 B.R. 386, 388 (Bankr. M.D.N.C. 2010)). However, section 1322(b)(2) protects some secured claims against modification. Specifically, section 1322(b)(2) provides that a plan may modify the rights of holders of secured claims, other than a claim secured only by a security interest in the real property that is the debtor's principal residence, or of the holders of unsecured claims. *Id.* Here, the deed of trust securing the Defendant's claim provides that the escrow fund will serve as additional security. The issue is whether the escrow account constitutes real property such that it would be included within the exception as set forth in 11 U.S.C. § 1322(b)(2).

The Fourth Circuit addressed the impact of the definition of "debtor's principal residence" upon section 1322(b)(2) in *In re Ennis*, 558 F.3d 343 (4th Cir. 2009). The Fourth Circuit noted that the anti-modification provision has "two distinct requirements: 1) real property; and, 2) real property which is the debtor's residence." " *In re Murray*, No. 10-10125-8-JRL, 2011 WL 5909638 at * 1 (citing *In re Ennis*, 558 F.3d 343 (4th Cir. 2009)). The Fourth Circuit ruled that the definition of principal residence in §101 (13A) only addressed the second prong of section 1322(b)(2). *Id.* In addition, the Fourth Circuit ruled that state law is controlling when determining whether the property

subject to a security interest is real property as required by the antimodification provision of section 1322(b)(2). *Id.*

The Bankruptcy Court for the Middle District of North Carolina addressed the issue of whether an escrow account is real property under North Carolina law. *In re Bradsher*, 427 B.R. 386, 389 (Bankr. M.D.N.C. Feb. 16, 2010). There, the terms of the deed of trust included monthly payments of escrow which served as additional security. *Id.* At 391. The court noted that:

> [t]he escrow provisions do not characterize or describe the rights arising from such provisions as being a component of the land described in the deed of trust or as constituting a right or privilege belonging or appertaining to such land. Nothing in the escrow provisions purports to engraft the escrow account onto the land so as to convert the escrow account into a tenement or hereditament that would be transferred to a grantee of the land. Nor was there any evidence of any custom or usage under which the escrow account would pass with a conveyance of the land.

*In re Bradsher*, 427 B.R. at 391. "Where the escrow account was not real property as defined by state law, the creditor was outside the protection of the anti-modification clause of § 1322(b)(2)."*In re Murray*, No. 10-10125-8-JRL, 2011 WL 5909638 at * 2 (citing *In re Bradsher*, 427 B.R. at 392) Here, as in *Bradsher*, the Defendant's deed of trust asserts a security interest in any escrow account an item of personal property. As a result, the anti-modification clause of 11 U.S.C. § 1322(b)(2) does not apply.

Accordingly, and pursuant to 11 U.S.C. §§ 506(d), 1322(b)(2), 1325(a)(5) and 1327(c), unless this case is dismissed pursuant to 11 U.S.C. § 349(b)(1)(C), the deed of trust of record in Book 2094, Page 0796, in the Office of the Register of Deeds of Wilson County held by Asset Ventures, LLC in the real property located at 4516 Harvest Lane, Wilson, North Carolina shall be secured in the amount of $19,745.89 and unsecured in the amount of $7,254.11. Default Judgment

is **GRANTED** in favor of the Plaintiff.

**SO ORDERED.**

**END OF DOCUMENT**